## FITTS *v.* BEARDSLEY *et al.*

(*Supreme Court, General Term, Fifth Department.* December 30, 1889.)

1. FRAUDULENT CONVEYANCES—EVIDENCE—VALIDITY OF MORTGAGE.

   Where a mortgagee testifies that he advanced the full consideration recited in the mortgage, and one to whom he had assigned it has foreclosed it, and its validity was not questioned in the foreclosure proceedings by any interested person, its validity is sufficiently established in an action to subject the proceeds of the foreclosure to the claims of the mortgagee's creditors on the ground that the assignment was fraudulent.

2. ASSIGNMENT OF MORTGAGE.

   Where in an assignment of a mortgage, it is stated that the mortgage was for a certain sum, and that it was assigned with all sums due and to become due thereon, and the assignor covenants that a certain sum, with interest, is due and unpaid, the debt secured by the mortgage will be treated as assigned with it.

3. FRAUDULENT CONVEYANCES—WHAT CONSTITUTES.

   Where property is purchased as a joint venture by R. &. B. and the price is paid by B. and the title taken in the name of R., who manages the property, and pays the the rents and profits to B. as interest on the price, a subsequent conveyance by R. to B., at a time when R.'s business credit is good, cannot be held as made in fraud of his creditors.

4. SAME—REMEDIES.

   The receiver of a judgment debtor who has elected to take a personal judgment against one to whom the debtor had assigned property cannot have the assignments set aside on the ground that they were fraudulent as to creditors.

Appeal from special term, Cayuga county.

Action by Leander Fitts against Nelson Beardsley, and Charles N. Ross, to recover property alleged to have been fraudulently conveyed by Ross to Beardsley. The plaintiff was duly appointed receiver of the goods and effects of Charles N. Ross, in proceedings supplementary to execution based upon several judgments wherein the First National Bank of Auburn was plaintiff, and Charles N. Ross defendant. The order appointing the receiver was made in December, 1879, and Ross, the judgment debtor, on October 3, 1887, assigned and conveyed to the receiver all his lands and real estate, and personal effects of every name and nature; and immediately thereafter this action was commenced. The transactions between the defendants Ross and Beardsley are referred to in the opinion, and some of them are by the judgment held to be fraudulent and void, and entered into for the purpose of cheating and defrauding the creditors of Ross. Out of the property so transferred, Beardsley received an amount in cash items greater than the amount of the claim of the bank; and a personal judgment was rendered against him for the sum of $16,450.92 in favor of the receiver, to be applied in payment of the judgments, receiver's fees, and costs of action. Beardsley appeals.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*John D. Teller*, for appellant. *Sereno Payne*, for respondents.

BARKER, P. J. The judgment debtor, Charles N. Ross, became financially embarrassed in May, 1879. At that time he was the owner of several pieces and parcels of land, of bank stock, bonds and mortgages, and other personal property of large value; the cash market value of which at that time was uncertain and doubtful. It was satisfactorily established on the trial that if his assets could have been held by Ross, and prudently and carefully managed and converted into money, in the usual and customary manner of disposing of property of the character of this, there could have been realized therefrom sufficient to pay his debts in full; but, by a resort to forced sales for cash, it is very doubtful if sufficient could have been realized to discharge all his pecuniary obligations. Very soon after discovering his financial condition, Mr. Ross was able to make an arrangement with one of his creditors to turn over his bank-stock at its par value,—and at that time its real value was no greater,—in discharge of an equal amount of his indebtedness. At that time he was indebted to

the defendant Nelson Beardsley in a considerable sum of money, $12,000 of which he secured by a mortgage upon unincumbered real estate. On the 24th day of May, 1879, Ross held a mortgage executed on the 13th day of July, 1869, by the Fulton Manufacturing Company, a corporation duly organized under the laws of the state of New York, upon which he claimed, and the trial court found, that there was then due and unpaid thereon the sum of $40,000, and interest thereon from the date of such mortgage, and that the value of the mortgaged premises was $60,000. At that time Beardsley was the owner of several prior mortgages on the same premises, upon which there was due at the time of such assignment $25,700. On the day last named, Ross, by an instrument in writing, transferred the said mortgage, and all sums of money due and to grow due thereon, to the defendant Beardsley. It is recited on the face of the assignment that the same was made upon a good and valuable consideration paid to the assignor by the assignee; but the amount thereof was not mentioned. The trial court held that the transfer of this obligation was without consideration, and was made with intent to defeat and defraud the creditors of Ross, and particularly the First National Bank of Auburn. Afterwards, and on the 5th day of September, 1879, the said Beardsley commenced two actions against said Ross in this court; and afterwards judgments were perfected therein, in one of them, on the 24th day of September, 1879, for the sum of $25,556.65 damages, with $16.92 costs and disbursements, and in the other action judgment was entered on the 26th day of September, 1879, for the sum of $13,834.61 damages and costs. The judgment rolls in both actions were filed in the Cayuga county clerk's office, and judgments duly docketed, and became liens upon all the real estate owned by the said Ross. It was found as a fact by the trial court that before the commencement of said actions it was agreed between said Ross and Beardsley that the former should place all of his property in the hands of said Beardsley, and the said Beardsley agreed to accept the same, and receive the title thereto, for the purpose of cheating and defrauding the creditors of the said Ross out of their just demands; and that for the purpose of carrying out such agreement, and to create false and fraudulent liens upon his property, the said actions were commenced, and judgments procured therein; and that the debts and demands set forth in the complaints in each of said actions were false and fictitious, the same having been paid up and discharged in full by the said Ross before the commencement of either of the said actions.

We have perused the voluminous evidence taken on the trial with close attention, and it has produced a firm conviction in our minds that the charge of fraud made against the validity of the assignment of the mortgage, and both of said judgments, has been fully sustained. It can be of no service to any of the parties having a pecuniary interest in the result of this appeal for us to point out the items of evidence found in the record which has led our minds to the conclusion stated, and we save ourselves the time and labor of giving a detailed account of the various dealings and transactions carried on for the purpose of consummating the fraudulent agreement. The immediate parties to those transactions were engaged in an audacious scheme to incumber, convert, and dispose of the property of the judgment debtor for the purpose of hindering, delaying, cheating, and defrauding the creditors of Ross. This cannot be doubted, in the face of the undisputed evidence found in the record. The friendship and confidential relations which existed between those parties at that time were subsequently broken and terminated; and the judgment debtor turned informer, and revealed the fraudulent plot which had been concocted. Both of these parties were witnesses on the trial, and in some respects their statements are conflicting; but the fraudulent character of their dealings can be discerned from the undisputed facts and circumstances so that enough of the truth is discovered to enable the court to say that the appellant Beardsley has in his hands the avails of a portion of the judgment debtor's

property for which in equity he should account to the creditors of the judgment debtor. The court need not devote much time for the purpose of ascertaining whether or not the judgment debtor owed the appellant a small part, as he claims, of the sums for which the judgments were rendered, as he cannot avail himself of a fraudulent transaction to secure the payment of an honest debt out of the debtor's property, against the protest and pursuit of other creditors. *Murtha* v. *Curley*, 90 N. Y. 372.

All the difficulty which we have encountered in the examination of this case is in determining the amount of money which has been actually realized by the appellant of the debtor's property by means of the fraudulent judgments and assignments. All the real estate sold on either of the executions issued on the said judgments which the appellant bid in at the sale, and received deeds therefor from the sheriff, and which he has since sold and conveyed to innocent third parties, should be accounted for, and directed to be paid over to the receiver for the benefit of the creditors of the judgment debtor. The same rule will apply to the personal property sold on execution. A court of equity may adapt its relief to the exigencies of the case. It may, when that is all the relief needed to pay the debt to the pursuing creditor, order a sum of money to be paid him, and give a personal judgment therefor. *Murtha* v. *Curley, supra*. After reciting the facts found, the trial court, among other things, adjudged and determined that the defendant Beardsley had, prior to the commencement of this action, sold, assigned, transferred, and conveyed, and suffered and allowed to pass beyond his control, the items of property referred to therein, and realized therefrom a sum in excess of the amount due the First National Bank of Auburn upon its judgment, and directed an order to the defendant Beardsley to pay over to the plaintiff the sum of $16,532.19 for the purpose of paying the said judgment against the said Ross, and the fees of the receiver, and the costs of this action.

We have now to inquire if the evidence fairly establishes that the appellant has realized the sum of money which he is directed to pay over by enforcing the said judgments, and the foreclosure of the mortgage on the Fulton property. If it appears that he has, then that part of the judgment should be sustained. It is a conceded fact that the appellant has realized from those sources a much larger sum than he is ordered to pay over to the receiver, and for which a personal judgment was rendered. It is urged by the appellant that the Fulton mortgage was valueless, and was not enforceable, either in law or in equity, as a lien upon the premises covered thereby, and for that reason the judgment creditors of Ross have no equitable claims on the moneys realized on that security. No bond accompanied the mortgage; and the same recites that it was given by the party of the first part "in consideration of the sum of $40,000," and then recites "that this grant is intended as a security for the payment to the said party of the second part of all the debts of said corporation which shall be purchased by him, not to exceed in the aggregate the sum of $40,000, with interest thereon, and the same to be paid as follows: That is to say, the interest thereon to be paid semi-annually on the first day of Jan. and July in each year, and the principal thereof to be paid on the first day of July, 1874." The instrument was acknowledged and recorded in the clerk's office of Oswego county, where the premises are situated. When the mortgage was executed the mortgagor was not indebted to Ross; but Ross stated as a witness, and it has not been contradicted by any other evidence, that the whole consideration of $40,000 mentioned in the mortgage was advanced and paid to the mortgagor. The mode and manner of making the advance does not appear by the record. All the parties to that instrument, and those interested in the premises at the time of foreclosure, have treated the instrument as valid, and as a security for the sum of $40,000. On the trial of this action the inquiry as to the validity of that instrument as an existing lien on the property covered by it at the time of the assignment to Mr. Beardsley, and the time

of its foreclosure by him, was not pursued beyond the statement of Mr. Ross, which appears to have been accepted as true; and if that be so it was well established that he advanced, under and in pursuance of the condition of the instrument, the full sum of $40,000. The court has made a finding that that sum was advanced by Ross to the mortgagor; and Mr. Beardsley, in his foreclosure proceedings, stated in the notice of sale that there was due thereon, according to the terms of the instrument, $58,706. At the time of foreclosure the mortgagor was insolvent, and this property was in the hands of an assignee in bankruptcy; and neither he nor any of the creditors of the bankrupt have questioned the validity of the security for the sum claimed to be due thereon. Mr. Beardsley himself assumed that the debt constituted a lien on the property which he has enforced, and has sold and transferred the property as his own upon the title derived in the foreclosure proceedings had thereon. From all that appears in this record, and in view of the issues tried and determined, the legality of that mortgage was amply sustained.

The further point was made by the appellant that by the mere assignment of the mortgage, without in terms assigning and transferring the debt secured thereby, the assignee acquired no title to the mortgage, and claimed nothing thereby, and that the debt secured by it remains the property of the assignor, and a debt against the manufacturing company, which the plaintiff may enforce as one of the assets which has come to his hands for administration. In the assignment of the mortgage it is stated that the mortgage was for $40,000, and that the same was assigned and transferred with all sums of money due and to grow due thereon; and the assignor gave a covenant to his assignee, embraced in the instrument of assignment, and constituting a part thereof, that that sum was due and unpaid, with interest thereon, from the date thereof. Whatever may be the nature and form of the indebtedness held and owned by the mortgagee, and secured thereby, we think it may be, for the purposes of this litigation, treated as assigned and transferred to the appellant; for if Beardsley had been a *bona fide* assignee, paying a valuable consideration therefor, as expressed in the assignment, he would have been treated as the equitable assignee of the indebtedness, and that the refusal of the trial court to find, as requested by the appellant, "that there was no transfer, assignment, or delivery by Ross to Beardsley of the debts and claims which Ross had purchased against the Fulton Manufacturing Company subsequent to the execution of the mortgage, and which constituted the defendants' and claimant's security therefor," was justified from all the evidence and circumstances of the case.

The foreclosure took place in the year 1880, and, as has been already stated, the appellant was the owner of several prior mortgages, upon which there remained due and unpaid a large amount in the aggregate. On the sale the premises were bid in, in the name of Mary D. Beardsley, a daughter of the assignee, for the sum of $3,000, as the nominal purchaser, but in fact for and in behalf of the appellant; and in January, 1885, the premises were sold and conveyed to a third party for the sum of $50,000, of which $20,000 was paid to the appellant in cash, and he received notes for the balance, secured by a mortgage on the premises. It is found and stated as a fact, in the decision of the court, that the premises were worth, at the time the mortgage was assigned to the appellant, the sum of $60,000, and the evidence tends to support that conclusion; while the evidence presented by the appellant tended to prove that their value at that time was not above $50,000, and that on a sale of the premises the appellant realized all they were reasonably worth. The appellant contends that the finding that the premises were worth $60,000 should not stand, being, as he alleges, against the weight of evidence. The decretal part of the judgment does not contain any provision that the appellant shall account in this action upon the basis that the property was worth $60,000, and that he should account for that sum after deducting therefrom

the sum total of the prior incumbrances held by himself; and for that reason the question whether the premises were worth that sum or not is not material in this review of the trial. The cash items actually received by the appellant from sales of property on his judgment and on the Fulton mortgage are greatly in excess of the amount of the personal judgment rendered against him, and therefore no injustice has been done. The question will hereafter be considered whether the form of the judgment should not be in some respects modified so as to protect the appellant against the claims of other creditors, if any should be made.

We are unable to concur with the finding that the conveyance of the "Hayden-Letchworth Property," so called, a block of buildings situated in the city of Auburn, was fraudulent, and should for that reason be set aside. That property was purchased, for the sum of $15,100, as a joint venture between Mr. Ross and Mr. Beardsley, with an expectation that it could be resold at an advance. The title was taken in the name of Ross; Mr. Beardsley furnishing all the purchase money except $100, for which Mr. Ross gave a memorandum check, which was held for some time, and afterwards the check was destroyed, and Mr. Ross gave his individual note to Mr. Beardsley for the same sum. The rents and income of the property for several years were sufficient to pay the interest on the purchase price, which Mr. Ross, who managed the property, paid over to Mr. Beardsley. Subsequently, and in May, 1878, at the request of Mr. Beardsley, the title was conveyed to him; and up to the time of his failure Mr. Ross continued to manage and account for the rents and profits, as he had previously done, and paid Mr. Beardsley the interest upon the moneys he had advanced. They do not agree whether the note was given up and canceled at the time Beardsley took the title to the property; Beardsley asserting that it was, and Ross denying it. But, whether it was or not, there is no pretense that Beardsley ever treated it otherwise than as a memorandum note. There is some proof that the property was worth more than it cost, and that a greater sum could be realized out of it. If the appellant's position cannot be supported, that the title was conveyed to him for the purpose of closing the transaction as between him and Ross, and the original transaction remains in force, then the creditors of the latter may call for a sale of the property, and that Beardsley render an account as a copartner in that speculation. When the title was transferred Ross was in business. His credit was good among business men. And, in view of the fact that he had made no investment, and that all his interest in the property was in anticipated profits, we think the fair construction to put upon the transaction is that the conveyance was executed with a view of securing Mr. Beardsley for his advances: and it seems proper and reasonable that Mr. Beardsley should have demanded that he should hold the title, as between himself and his copartner, until he had been paid one-half of the purchase price. The decree should be modified by striking therefrom all of its provisions which determine that that conveyance was fraudulent and void, and the question will then remain open whether the copartnership was closed.

Although we are of the opinion that so much of the judgment as requires the appellant to pay over a definite sum of money to the plaintiff as receiver must stand as well determined, in view of the facts of the case, we think it proper briefly to refer to one or two other questions not necessarily involved in this action, that the decree may be modified in accordance with our views. As the pursuing creditor in this action has elected to take a personal judgment against the appellant, he is not entitled to a judgment setting aside the judgments and conveyances which have been found fraudulent. As between these parties, they should stand, because the appellant is required to pay in money a large part of the sum which he has realized out of the judgment debtor's property. He has used the fraudulent judgments and conveyances, as instruments in his hands, to enable him to carry into execution in part the

fraudulent schemes which he and the judgment debtor concocted for the purpose of defrauding the creditors of the latter, and the pursuing creditor had the right to elect and rely upon the personal responsibility of the appellant; and the decree has not been framed so as to permit the receiver to pursue the portions of the property, of which the appellant has yet the title. Although it appears that the receivership has been extended to other cases where judgment creditors have instituted supplemental proceedings, and the judgment debtor has made a conveyance to him of all his property, both real and personal, the receiver asks for no other relief in this action, and none has been granted, except that which is sufficient to pay off the said judgment in favor of the First National Bank of Auburn, and the receiver's fees, and the costs of this action. Yet it has been declared that certain other proceedings carried on by the appellant were fraudulent and void, and were decreed to be set aside when it was unnecessary to attack them for the purposes of this action.

We think in one or two other respects the judgment should be modified so as to make its provisions more certain and definite, so that it will not have the effect of disturbing and setting aside as fraudulent and void the foreclosure of the mortgages held by the appellant on the Fleming farm, and the homestead house and lot located in the city of Auburn. We do not intend to affirm that those proceedings are valid, and cannot be attacked as fraudulent and void as against pursuing creditors. But as no relief against those transactions was demanded by the plaintiff in this action, and none is necessary to secure the payment of the judgment upon which this action is based, the decree should be limited so as not to invalidate the foreclosure proceedings to which reference has been made.

The appellant makes the further point that the right of creditors to relief against his fraudulent acts is barred by the statute of limitations, as this action was not commenced within six years after the perpetration of the frauds. It is provided by the act that an action to procure a judgment, other than for a sum of money, on the ground of fraud, in a case, which, on the 31st day of December, 1846, was cognizable by a court of chancery, must be commenced within six years from the time the cause of action accrued. But the cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff or the person under whom he claims, of the facts constituting the fraud. Sections 380, 381, and 382, subd. 5. The relief which the plaintiff demands in this case is based upon the alleged frauds of the judgment debtor and of the appellant; and the court of chancery, prior to the adoption of the act of 1846, had jurisdictions of suits of this character. The relief sought in this action is similar to that granted in an ordinary judgment creditor's suit, of which courts of equity had exclusive jurisdiction. The plaintiff would have been entitled to no relief in this action, as the representative of the judgment creditors of Ross, without establishing that the latter had transferred some portion of his assets to Beardsley in fraud of their rights. Subdivision 5, § 382, refers to every case cognizable by the old court of chancery, whether its jurisdiction was exclusive or concurrent with that of the courts of law, in which a judgment is sought for any remedy or relief over or above, or in addition to, a mere money judgment. *Carr* v. *Thompson*, 87 N. Y. 160. The receiver was appointed more than six years prior to the commencement of this action; and we think the facts and circumstances attending the dealings between the appellant and Ross, together with the relation which each of them sustain towards the judgment creditor, both being officers of that bank, justified the finding that at the time of the commencement of this action not more than six years had elapsed after the discovery by the plaintiff, or by the First National Bank, of any of the facts found and set forth in the decision, constituting the fraud which makes a case entitling the plaintiff to relief. We think that from the whole history of the case, as disclosed by the record, their scheme or contrivance was such as to

allay all suspicion by Ross' creditors; and it can surprise no one that the officers of the bank were supine, and entertained no thought that its late president had fraudulently transferred or incumbered with false liens all his property, to one of its directors and stockholders, for the purpose of hindering and delaying it in the collection of its just demands. The appellant and Ross were prominent in the business affairs in the city in which they lived. The former was a man of wealth, and an officer of one of the oldest banking institutions in the state, and the latter had been a state officer, having charge of one of the financial departments of the state; and they, above all men in the vicinity where they lived, would naturally be regarded as foremost in maintaining a high standard of integrity among men. And it could not have been readily believed by their associates in business that they would have concocted such a scheme as is disclosed by the evidence. We are therefore ready to hold that the first information which the pursuing creditors received of the nature and character of transactions which have been reviewed was when Ross made the disclosures which are set out in his evidence, and that was first done within six years prior to the commencement of this action. We have been referred by the appellant to the case of *Wood* v *Carpenter,* 101 U. S. 135, which contains a discussion of the statute of limitations of another state, and failed to discover the assertion of any legal proposition which, if applicable to our own statute, would bar the granting of relief in this action. The judgment should be modified so as to conform to the views which we have expressed, and as modified affirmed, with costs to the respondent. All concur.